UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
(EASTERN DIVISION)

|  |  |
|---|---|
| In re:<br><br>RECREATION DISCOUNT WHOLESALE, INC.,<br>Debtor. | Chapter 11<br>(Subchapter V)<br>Case No. 25-12606-CJP |

## **DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION**

**Dated: March 2, 2026**

RECREATION DISCOUNT WHOLESALE, INC.

By its attorneys

*/s/  David B. Madoff*
David B. Madoff (BBO#552968)
Steffani M. Pelton (BBO#666470)
MADOFF & KHOURY LLP
124 Washington Street – Ste. 202
Foxborough, Massachusetts 02035
(508) 543-0040
madoff@mandkllp.com

1

**DEBTOR'S CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION**

Recreation Wholesale Discount, Inc., the Subchapter V small business debtor and debtor-in-possession in the above-captioned Chapter 11 case, hereby proposes this Chapter 11 Subchapter V Plan of Reorganization to all creditors in this case.

**TABLE OF CONTENTS**

| | |
|---|---|
| ARTICLE I | Definitions and Construction of Terms |
| ARTICLE II | Background and Disclosures Pursuant to 11 U.S.C. § 1190 |
| ARTICLE III | Voting to Accept or Reject the Plan |
| ARTICLE IV | Classification of Claims |
| ARTICLE V | Treatment of Allowed Unclassified Claims |
| ARTICLE VI | Treatment of Claims |
| ARTICLE VII | Means for Implementation of the Plan |
| ARTICLE VIII | Executory Contracts |
| ARTICLE IX | General Provisions |

**ARTICLE I**
**DEFINITIONS**

Capitalized terms used herein shall have the meanings ascribed to them below, and such meanings shall be equally applicable to both the singular and plural forms of such terms.  Terms defined in the Bankruptcy Code shall have the meanings ascribed to them in the Bankruptcy Code, unless the context clearly requires otherwise.

1.1     "Administrative Claim Bar Date" means the deadline set by the Bankruptcy Court for filing an application for payment of administrative expenses under Section 503 of the Bankruptcy Code, other than an application related to fees and expenses incurred by professionals employed in the Debtor's Chapter 11 case.

1.2     "Allowed" or "Allowed Claim" means a Claim, proof of which was timely filed in the Proceedings or that has been, or hereafter is, listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and, in either case, as to which no objection to the allowance thereof has been timely filed within the applicable

2

period of limitation therefor or, or where an objection has been filed, such Claim has been allowed (and only to the extent allowed) by a Final Order of the Bankruptcy Court.

1.3 "Avoidance Action" means any causes of action commenced pursuant to Sections 544, 547, 548, 550, and 551 of the Bankruptcy Code.

1.4 "Asset(s)" shall mean all real or personal property of the Debtor, whether tangible or intangible and wherever situated, together with the proceeds thereof.

1.5 "Bankruptcy Code" means Title 11 of the United States Code.

1.6 "Bar Date" means February 10, 2026, the deadline set by the Bankruptcy Court for the filing of prepetition claims against the Debtor.

1.7 "Claim" means a right to payment or a right to an equitable remedy as set forth in Section 101 of the Bankruptcy Code.

1.8 "Collateral" shall mean any property or interest in property of the Debtor's estate subject to a lien to secure the payment or performance of a Claim, which lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

1.9 "Confirmation Date" means the date on which the Confirmation Order is entered.

1.10 "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan under Section 1129 of the Bankruptcy Code.

1.11 "Debtor" means "Recreation Discount Wholesale, Inc."

1.12 "Effective Date" means the first business date following the date on which the Confirmation Order becomes a Final Order.

1.13 "Fee Application Bar Date" means the deadline set by the Bankruptcy Court for filing applications for the allowance of fees, and reimbursement of expenses, under Section 503 of the Bankruptcy Code, on account of fees and expenses incurred by professional persons employed in the Debtor's Chapter 11 case, and the Subchapter V Trustee.

1.14 "Final Decree" means a Final Order of the Bankruptcy Court closing the Debtor's Chapter 11 proceedings.

1.15 "Final Order" means an order of a court that has not been reversed, vacated, stayed, modified or amended, and which is no longer subject to appeal or certiorari proceeding and no appeal or certiorari proceeding is pending.

1.16   "Lien Avoidance Action" shall mean any claims by the Debtor under the Bankruptcy Code to avoid the fixing of a lien on an interest of the Debtor to the extent such lien impairs the Debtor's exemption.

1.17   "Petition Date" means December 2, 2025.

1.18   "Plan" means the within Plan of Reorganization, either in its present form or as it may be amended from time to time in accordance with the terms hereof and the applicable provisions of the Bankruptcy Code.

1.19   "Proceedings" means the Chapter 11 proceedings commenced by the Debtor.

1.20   "Professional Person" means a person employed by the Debtor pursuant to Section 327 of the Bankruptcy Code and the Subchapter V Trustee.

1.21   "Reorganized Debtor" means the Debtor as it exists on and after the Effective Date as reorganized under and pursuant to the Plan.

1.22   "Schedules" means the Schedules of Assets and Liabilities of the Debtor filed with the Bankruptcy Court on December 2, 2025, in these Proceedings, and as the same may be amended from time to time.

1.23   "Subchapter V Trustee" means the trustee, Stephen S. Gray, appointed by the United States Trustee in this case pursuant to 11 U.S.C. § 1183.

## ARTICLE II
## BACKGROUND AND DISCLOSURES PURSUANT TO 11 U.S.C. § 1190

2.1   **Introduction**

On December 2, 2025, the Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.  Pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code, the Debtor continues to manage its businesses and financial affairs as a debtor-in-possession.

In accordance with the provisions of 11 U.S.C. § 1190, this Plan contains a brief history of the business operations of the Debtor, a liquidation analysis and a projection with respect to the ability of the Debtor to make Plan payments.  The Debtor shall submit its future income and earnings to satisfy this proposed Plan.

2.2   **Brief History and Background**

The Debtor, founded in 2012, is an online retail company based out of Walpole, Massachusetts.  It operates a family of niche ecommerce websites specializing

4

in home recreation, pool & spa and outdoor living. The Debtor offers over 15,000 products and parts that ship through a network of over 100 vendors and warehouses throughout the United States.

Hurt initially by Covid, and then a declining market in the recreation pool industry, the Debtor took on a substantial Emergency Impact Disaster Loan ("EIDL") from the United States Small Business Administration (the "SBA"), followed by merchant cash advances (MCAs) with unmanageable interest obligations.

Notwithstanding industry issues, the Debtor, which has been operating in its slow season until the beginning of March 2026, believes that by reducing and restructuring its SBA and MCA debt, it will be able to return to a positive cash flow and make a reasonable distribution to unsecured creditors.

2.3      **Debtor's Assets and Liabilities (As of February 2026)**

Assets (at fair market value):

| | | |
|---|---|---|
| Cash and Deposits | $ | 14,000.00 |
| Credit Card Receivables | $ | 2,200.00 |
| Security Deposits | $ | 3,000.00 |
| Miscellaneous Pool Inventory (at cost) | $ | 246,000.00 |
| Office Furniture Equipment (at cost) | $ | 32,000.00 |
| Avoidance Actions[1] | $ | Unknown |
| IP and Customer List | $ | 0.00 |
| ERTC | $ | 7,500.00 |
| **Total Assets** | **$** | **304,700.00** |

Liabilities:

| | | |
|---|---|---|
| Marino Trusts (All Asset Lien)[2] | $ | 128,356.21 |
| Eastern Bank (All Asset Lien) | $ | 50,026.17 |

---

[1] Debtor has not yet determined the extent of potential avoidance actions.
[2] Insider debt.

| | | |
|---|---|---|
| SBA (All Asset Lien) | $ | 1,106,954.51 |
| Junior Asserted Secured Claims | $ | 568,062.37 |
| Priority Unsecured – Non-Tax | $ | 157,563.00 |
| Priority Unsecured – Tax | $ | 52,409.65 |
| Pre-Petition Lease Claims | $ | 8,900.00 |
| Approximate fees of case professionals including Subchapter V Trustee | $ | 33,000.00 |
| General Unsecured Claims | $ | 1,073,468.15 |
| **Total Liabilities:** | **$** | **3,178,739.41** |

### 2.4       **Brief Summary of Plan Terms and Strategy**

The Plan is intended to allow the Debtor to remain in business.  Under the Plan: (i) the Marino Trusts will retain their security interests in the Debtor's assets but will receive no payment under the Plan on account of their status as insiders of the Debtor; (ii) the Allowed Secured Claim of Eastern Bank will be paid in full over a period of five years; (iii) the secured portion of the SBA Claim will be paid in full over a period of twenty-five years; (iv) Allowed Priority Non-Tax Claims will be paid in full over a period of five years; (v) Allowed Priority Tax Claims will be paid in full over a period of five years; (vi) Lease assumption claims will be paid in full on the Effective Date; (vii) Allowed Administrative Claims of Professionals will be paid over a period of twelve months; and (viii) a dividend of approximately $172,553.00 will be paid to holders of Allowed General Unsecured Claims based on the net disposable income of the Debtor over a five year period.

A budget reflecting the Debtor's projections over the sixty-month period from the Effective Date as well as the projected payments to be made pursuant to the Plan (the "Budget") is attached hereto as **Exhibit A.**  The Plan constitutes the Debtor's best efforts to repay creditors.

### 2.5       **Liquidation Analysis as Required Pursuant to 11 U.S.C. § 1190(1)(B)**

The Debtor has commenced an analysis of transfers made to non-insiders within ninety days prior to the Petition Date, and to insiders within one year prior to the Petition Date.  With respect to non-insiders, the transfers were, primarily, payments customarily made in the ordinary course of the Debtor's business.  With respect to insiders, the transfers were on account of compensation or expense reimbursements.  Specifically, within one year prior to the Petition Date, owner and treasurer Eric Feigen received

$75,000.12 in total compensation and his son, Shaun Feigen, received $67,499.90 in total compensation.

The Debtor's liquidation analysis, set forth below, demonstrates the amount that would likely be available for General Unsecured Claimants in the event the Debtor's assets were immediately liquidated.

| | |
|---|---|
| Cash and Deposits | $ 14,000.00 |
| Credit Card Receivables | $  2,200.00 |
| Security Deposit | $  3,000.00 |
| ERTC | $  7,500.00 |
| Miscellaneous Pool Inventory (at liquidation value) | $123,000.00 |
| Office Furniture and Equipment (at liquidation value) | $  5,000.00 |
| IP / Customer List | $      0.00 |
| Recoverable Transfers[3] | Unknown |
| **Total Assets** | **$154,700.00** |
| | |
| Eastern Bank (All Assets) | $    50,026.17 |
| SBA (All Assets) | $1,106,954.51 |
| Junior Asserted Secured Claims | $  568,062.37 |
| Ch. 11 Admin Claims | $    33,000.00 |
| **Total Secured and Admin Claims** | **$1,758,043.05** |
| | |
| **Available for Unsecured Creditors** | **$0.00** |

The foregoing Liquidation Analysis reflects that, in the event the Debtor were to liquidate its assets under Chapter 7 of the Bankruptcy Code, priority and general unsecured claimants would likely receive approximately $0.00 on account of such Claims.  The Plan however proposes to pay general unsecured claimants a fair dividend over the life of the Plan on account of such Claims.

2.6      **Feasibility Analysis as Required Pursuant to 11 U.S.C. § 1190(1)(C)**

The Budget attached hereto as **Exhibit A** constitutes a feasibility analysis, which contains income and expense projections over the next five years, demonstrating the ability of the Debtor to make payments under the Plan.  The Budget, which is based on the Debtor's historical sales and expenses, demonstrates that the Allowed Claimants will receive payments equal to or greater than the Reorganized Debtor's projected net disposable income.

---

[3] The Debtor is investigating the existence of potential avoidance actions but has not yet determined if any such actions in fact exist, and if so, whether it would be economically prudent to pursue them.  Any net funds recovered on account of successful avoidance actions, after payment of legal fees incurred to recover them, will be used to increase the dividend payable to Class 3 General Unsecured Claimants.

7

Based on the foregoing, pursuant to Sections 1129(a)(11) and 1191(C)(3) of the Code, confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor, and there is a reasonable likelihood that the Debtor will be able to make all payments under the Plan.

### 2.7     Status of Claims Objections

The deadlines for objecting to Claims have not yet passed.  The Debtor is in the process of reviewing Claims and reserves the right to initiate objections to Claims in accordance with the deadlines set forth in this Plan and/or by Order of the Court.

## ARTICLE III
## VOTING TO ACCEPT OR REJECT THE PLAN

### 3.1 Who May Vote

Bankruptcy law provides that any class of creditors or stockholders whose rights are "impaired" under a proposed plan of reorganization has the right, as a Class, to accept or reject the plan.  Each member of the Class may vote on this decision.  A Class of creditors accepts the Plan if more than one-half of the ballots that are timely received from members of the Class, representing at least two-thirds of the dollar amount of Claims for which ballots are timely received, are voted in favor of the Plan.  Classes 1A, 1B, 1C, 2 and 3 are impaired and may therefore vote to accept or reject the plan.  Class 4 is unimpaired and may not vote.

### 3.2     Submission of Ballots

Included in the same envelope containing this Plan is a ballot by which you may vote to accept or reject the Plan.  Instructions for completing and returning the ballot are found on the ballot itself.  IN ORDER FOR YOUR VOTE TO COUNT, IT MUST BE RECEIVED BY THE UNDERSIGNED COUNSEL NO LATER THAN THE DATE SET FORTH IN THE SCHEDULING ORDER (the "SCHEDULING ORDER") PROVIDED TO YOU WITH THIS PLAN.  Submission of ballots by telefacsimile, or by any means not including an original authorized signature, is prohibited.

### 3.3     Hearing and Objections

The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on the date set forth in the Scheduling Order.  If you wish to object to confirmation of the Plan, then you must file and serve a written objection, in accordance with the Order and notice enclosed herewith, by not later than the deadline set forth in the Scheduling Order. The Plan will be confirmed if it meets the requirements set forth in the bankruptcy law.

### 3.4     Reservation

Assuming that the Plan is otherwise confirmable, the Debtor reserves the right to seek confirmation even if one or more classes vote to reject the Plan.  In addition, the Debtor reserves the right, in order to resolve any objection to confirmation of the Plan or otherwise, to modify the Plan without further notice or disclosure, so long as the modification does not adversely change the treatment of any creditor who has not accepted the modification.

### ARTICLE IV
### CLASSIFICATION OF CLAIMS

For the purpose of this Plan, Claims are divided into Classes.  A Proof of Claim asserting a Claim that is properly included in more than one Class is included in each such Class to the extent that it qualifies within the description of such Class.  This classification of Claims is made for purposes of voting on the Plan and making distributions hereunder and for ease of administration hereof.  All Claims, except Administrative Claims, are placed in the Classes described below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, as described below in Article V, have not been classified and are thus excluded from the Classes below.

4.1     <u>Class 1A</u> consists of the secured Claims of the Peter G. Marino Revocable Trust and the Margaret Y. Marino Revocable Trust (the "Marino Trusts").

4.2     <u>Class 1B</u> consists of the secured Claim of Eastern Bank.

4.3     <u>Class 1C</u> consists of the secured Claim of the U.S. Small Business Administration.

4.4     <u>Class 2</u> consists of the prepetition priority non-tax Claims of the Debtor.

4.5     <u>Class 3</u> consists of the general unsecured Claims against the Debtor.

4.6     <u>Class 4</u> consists of the equity interests in the Debtor.

### ARTICLE V
### TREATMENT OF ALLOWED UNCLASSIFIED CLAIMS

5.1     **Administrative Expense Claims**

Administrative claims under 503(b) include expenses incurred during the Chapter 11 case, including fees and expenses of Professional Persons, including the Subchapter V Trustee, and other expenses. Holders of Allowed Claims for administrative expenses that have been incurred in the ordinary course of the Debtor's business shall be paid in the ordinary course of business.

With the exception of rent, discussed below, the Debtor has been paying all post-petition obligations as they come due.

5.2      **Bar Date for Filing Administrative Expense Claims (Non-Professional Persons).**

Any party seeking an administrative claim for expenses incurred during the Debtor's reorganization, other than expenses incurred on account of the employment of Professional Persons, shall file an application for allowance of administrative expenses ("Administrative Expense Applications") on or before the Administrative Claim Bar Date set forth in the Scheduling Order. All Administrative Expense Applications shall be filed with the Court and served on the Notice Parties and all parties having filed an appearance in the case.

Any objections to any Administrative Expense Application shall be filed on or before the deadline set forth in the Scheduling Order. The objection shall be served on the party filing the Administrative Expense Application, the Notice parties, and all parties having filed an appearance in the case. Any person filing an objection to an Administrative Expense Application will be required to be present at the Administrative Expense Application hearing.

5.3      **Bar Date for Filing Administrative Expense Claims (Professional Persons).**

Any professional seeking allowance for fees and expenses in the Debtor's Chapter 11 proceedings shall file an application for allowances of fees and reimbursement of expenses ("Fee Applications"), on or before the Fee Application Bar Date set forth in the Scheduling Order. All Fee Applications shall be filed with the Court and served on the Notice Parties and all parties having filed an appearance in the case. Any applicant shall also provide a copy of the Fee Application to a creditor upon request.

Any objections to any Fee Application shall be filed on or before the deadline set forth in the Court's Scheduling Order. The objection shall be served on the applicant, the Notice parties, and parties having filed an appearance in the case. Any person filing an objection to a Fee Application will be required to be present at any hearing regarding such Fee Application.

The Debtor asserts that the only outstanding Claims for professional fees are the Claims of Debtor's Counsel and the Subchapter V Trustee. Debtor's Counsel anticipates fees of approximately $28,000.00 and is currently holding a retainer in the amount of $18,000.00 which will be applied against any Claim for professional fees which is ultimately allowed, leaving a balance due under the Plan of approximately $10,000.00. The Subchapter V Trustee expects his fees to be approximately $5,000.00.

All fees for professional persons are subject to approval by the Bankruptcy Court.

5.4      **Priority Tax Claims**

10

As provided in section 1123(a)(1) of the Bankruptcy Code, Priority Tax Claims are not classified for the purpose of voting on or receiving distributions under the Plan. The treatment of Priority and Secured Tax Claims is set forth in Section 1129(a)(9)(C) and (D) of the Code.

The Debtor asserts that the Connecticut Department of Revenue (the "Conn DOR") is owed a priority tax Claim in the amount of $2,580.00 (the "Conn DOR Priority Claim"). The Conn DOR has not filed a Proof of Claim in these proceedings.

The Internal Revenue Service (the "IRS") has filed a Proof of Claim [Claim No. 22] pursuant to which it asserted a priority tax Claim in the amount of $3,172.03 (the "IRS Priority Tax Claim") and a general unsecured Claim in the amount of $5,404.13 (the "IRS General Unsecured Claim").

The Massachusetts Department of Revenue (the "Mass DOR") has filed a Proof of Claim [Claim No. 4] pursuant to which it asserts a priority tax Claim in the amount of $1,619.85 (the "Mass DOR Priority Claim") and a general unsecured Claim in the amount of $420.26 (the "Mass DOR General Unsecured Claim").

The Massachusetts Department of Unemployment Assistance (the "Mass DUA") has filed a Proof of Claim [Claim No. 2] pursuant to which it asserts a priority Claim in the amount of $10,495.29 (the "Mass DUA Priority Claim") and a general unsecured Claim in the amount of $16,406.18 (the "Mass DUA General Unsecured Claim").

The Debtor asserts that the Michigan Department of Revenue (the "Michigan DOR"" is owed a priority tax Claim in the amount of $11,074.00 (the "Michigan Priority Claim"). The Michigan Department of Revenue has not filed a Proof of Claim in these proceedings.

The Missouri Department of Revenue (the "Missouri DOR") has filed a Proof of Claim [Claim No. 1] pursuant to which it asserts a priority tax Claim in the amount of $220.90 (the "Missouri Priority Claim").

The New York State Department of Taxation and Finance (the "NY DTF") has filed a Proof of Claim [Claim No. 7] pursuant to which it asserts a priority tax Claim in the amount of $22,071.15 (the "NY DTF Priority Claim") and a general unsecured Claim in the amount of $4,380.55 (the "NY DTF General Unsecured Claim").

The Pennsylvania Department of Revenue (the "Penn DOR") has filed a Proof of Claim [Claim No. 20] pursuant to which it asserts a priority tax Claim in the amount of $1,131.43 (the "Penn DOR Priority Claim") and a general unsecured Claim in the amount of $190.10 (the "Penn DOR General Unsecured Claim").

The Debtor asserts that the West Virginia Department of Revenue (the "WV DOR") is owed a priority tax Claim in the amount of $45.00 (the "WV DOR Priority Claim"). The WV DOR has not filed a Proof of Claim in these proceedings.

11

The priority Claims of the Conn DOR, IRS, MDOR, MDUA, Michigan DOR, Missouri DOR, NY DTF, Penn DOR and WV DOR will be paid the full amount of such Claims in equal monthly cash payments over a period of up to five years from the Petition Date in accordance with 11 U.S.C. § 1129(a)(9)(C), including appropriate interest pursuant to Section 511 of the Bankruptcy Code, and any applicable state laws, beginning on the later of the Effective Date or the date on which such Claims becomes Allowed Claims, to the extent they are in dispute.

To the extent that they become Allowed Claims, the General Unsecured Claims of the IRS, Mass DOR, Mass DUA, NY DTF and Penn DOR shall be treated in accordance with Class 3 below.

### 5.5   Bar Date for Filing Priority Tax Claims

Pursuant to section 502(b)(9)(A) of the Bankruptcy Code, the deadline for filing Priority Tax Claims is 180 days after the Petition Date.

### ARTICLE VI
### TREATMENT OF CLAIMS

6.1   **Class 1A** – Secured Claims of the Peter G. Marino Revocable Trust and the Margaret Y. Marino Revocable Trust

Class 1A consists of the secured Claims of the Peter G. Marino Revocable Trust and the Margaret Y. Marino Revocable Trust (the "Marino Trusts").

The Debtor is indebted to the Marino Trusts in the amount of approximately $128,357.00 pursuant to a series of promissory notes dated from September 18, 2018, to January 30, 2025 (the "Trust Claims").  The obligation is secured by a senior lien on all assets of the Debtor, as evidenced by a UCC-1 financing statement filed on August 24, 2016, and Amendments filed on August 2, 2018, March 12, 2021, and a Continuation Statement on May 20, 2021.

The Marino Trusts are insiders of the Debtor as that term is defined under 11 U.S.C. §§ 101(31)(B)(ii), (iii) and (vi).  Peter G. Marino is President and a 15% shareholder of the Debtor.

Under the Plan, the Marino Trusts shall receive no payments on account of the Trust Claims until such time as the Debtor has satisfied all Plan obligations in full.

Except as expressly modified by this Plan and/or the Confirmation Order, the Marino Trusts shall retain their prepetition lien in the property securing the obligation until the Trust Claims are paid in full.  Nothing in the Plan or the Confirmation Order shall prejudice, affect or impair the validity, perfection, enforceability or priority of the Marino Trusts' prepetition lien and security interest in property described as the collateral of other creditors in any other Class of the Plan.

*Class 1A is impaired.*

6.2    **Class 1B** – Secured Claim of Eastern Bank

Class 1B consists of the secured Claim of Eastern Bank ("Eastern") in the amount of approximately $50,027.00 (the "Eastern Secured Claim").  Eastern did not file a Proof of Claim in these Proceedings.

The Eastern Secured Claim is secured by a lien on all assets of the Debtor as evidenced by a UCC-1 financing statement filed on September 24, 2018, and Continuation Statement filed on June 14, 2023.  The Debtor asserts that the current liquidation value of all assets constituting Eastern's collateral is approximately $154,700.00.  Accordingly, the Debtor asserts that Eastern is fully secured.

Under the Plan, in full and final satisfaction of the Eastern Secured Claim, the Debtor shall pay the Eastern Secured Claim in full, together with interest thereon at a rate of ten percent (10%) per annum, in equal cash installments over a period of sixty (60) months from the Effective Date in accordance with the Budget attached hereto as **Exhibit A.**

Except as expressly modified by this Plan and/or the Confirmation Order, Eastern shall retain its prepetition lien in the property securing the obligation until the Eastern Secured Claim is paid in full according to the terms of this Plan.  Nothing in the Plan or the Confirmation Order shall prejudice, affect or impair the validity, perfection, enforceability or priority of Eastern's prepetition lien and security interest in property described as the collateral of other creditors in any other Class of the Plan.

*Class 1B is impaired.*

6.3    **Class 1C** – Secured Claim of the U.S. Small Business Administration

Class 1C consists of the secured Claim of the U.S. Small Business Administration (the "SBA"), in the approximate amount of $1,106,955.00, pursuant to an Emergency Impact Disaster Loan (EIDL) made to the Debtor in May 2020 during the COVID-19 pandemic (the "SBA Claim").  The SBA did not file a Proof of Claim in these Proceedings.  The SBA obligation is secured by a lien on all assets of the Debtor as evidenced by a UCC-1 financing statement filed on May 25, 2020, and a Continuation Statement filed on May 9, 2025.

The Debtor asserts that after accounting for the Eastern Secured Claim, the current fair market value of all remaining assets that constitute the SBA's collateral is approximately $104,673.00.  Accordingly, the Debtor asserts that the SBA is secured to the extent of $104,673.00 (the "SBA Secured Claim") and unsecured to the extent of $1,002,282.00 (the "SBA Unsecured Claim").

13

Under the Plan, in full and final satisfaction of the SBA Secured Claim, the Debtor shall pay the SBA Secured Claim in full, together with interest thereon at a rate of three and three-quarters percent (3.75%) per annum, in equal cash installments over a period of three hundred (300) months (25 years) from the Effective Date in accordance with the Budget attached hereto as **Exhibit A**.

The SBA Unsecured Claim shall be treated in accordance with Class 3 below.

Except as expressly modified by this Plan and/or the Confirmation Order, the SBA shall retain its prepetition lien in the property securing the obligation until such time as the SBA Secured Claim is paid in full. Nothing in the Plan or the Confirmation Order shall prejudice, affect or impair the validity, perfection, enforceability or priority of the SBA's prepetition lien and security interest in property described as the collateral of other creditors in any other Class of the Plan.

*Class 1C is impaired.*

6.4   **A Note About Other Asserted Secured Claims**

a.   **Morris Trade Solutions, as representative for Radiance Funding ("Morris")**. Radiance Funding ("Radiance") filed a Proof of Claim [Claim No. 17] pursuant to which it asserted a secured Claim in the amount of $193,540.68 (the "Radiance Claim"). The Radiance obligation is secured by a junior lien on all assets of the Debtor, as evidenced by a UCC-1 financing statement filed on August 7, 2025. The Debtor asserts that, after accounting for the Eastern Bank and SBA liens, Radiance is wholly unsecured. Accordingly, under the Plan, the Radiance Claim shall be treated in accordance with Class 3 below.

b.   **Atlas Acquisitions LLC on behalf of Fenix Funding LLC**. Atlas Acquisitions LLC ("Atlas") filed a Proof of Claim [Claim No. 6] on behalf of Fenix Funding LLC ("Fenix") pursuant to which it asserted a secured Claim in the amount of $183,840.00 (the "Fenix Claim"). The Fenix obligation is secured by a junior lien on all assets of the Debtor, as evidenced by a UCC-1 financing statement filed on September 19, 2025. The Debtor asserts that, after accounting for the Eastern Bank and SBA liens, Fenix is wholly unsecured. Accordingly, under the Plan, the Fenix Claim shall be treated in accordance with Class 3 below.

c.   **Parafin, Inc.** The Debtor is obligated to Parafin, Inc. ("Parafin") in the amount of $23,829.00 (the "Parafin Claim"). Parafin did not file a Proof of Claim in these Proceedings. The Parafin obligation is secured by a junior lien on all assets of the Debtor, as evidenced by a UCC-1 financing statement filed on September 25, 2025. The Debtor asserts that, after accounting for the Eastern Bank and SBA liens, Parafin is wholly unsecured. Accordingly, under the Plan, the Parafin Claim shall be treated in accordance with Class 3 below.

d.   **CHTD Company, as Representative for Bill Me Later, Inc. (also DBA**

14

**PayPal).**  Bill Me Later, Inc. ("BML") filed a Proof of Claim [Claim No. 3] pursuant to which it asserted a secured Claim in the amount of $109,986.88 (the "BML Claim").  The BML obligation is secured by a junior lien on all assets of the Debtor, as evidenced by a UCC-1 financing statement filed on October 14, 2025, by CHTD Company, as Representative. The Debtor asserts that, after accounting for the Eastern Bank and SBA liens, BML is wholly unsecured.  Accordingly, under the Plan, the BML Claim shall be treated in accordance with Class 3 below.

e.     **Corporation Service Company, as Representative for Rapid - LOC.** The Debtor is obligated to Rapid - LOC ("Rapid") in the amount of $56,866.01 (the "Rapid Claim").  Rapid did not file a Proof of Claim in these Proceedings.  The Rapid obligation is secured by a junior lien on all assets of the Debtor as evidenced by, upon information and belief,[4] a UCC-1 financing statement filed on December 1, 2025, by Corporation Service Company, as Representative ("CSC"). The Debtor asserts that, after accounting for the Eastern Bank and SBA liens, Rapid is wholly unsecured. Accordingly, under the Plan, the Rapid Claim shall be treated in accordance with Class 3 below.

6.5     **Class 2** – Priority Claims (Non-Tax) against the Debtor

Class 2 is comprised of all holders of non-tax Allowed Claims entitled to priority under Sections 507(a)(2) – (7) of the Code.  Section 1129(a)(9)(A) of the Code requires, with respect to Priority Claims that, except to the extent the holder of such Priority Claim has agreed to a different treatment of such Claim, on the Effective Date of the plan, holders of such claims "receive on account of such claim cash equal to the allowed amount of such claim."

The only creditor believed to hold a Claim entitled to priority under Section 507(a)(4) is Meghan Becker in the amount of $6,000.00.

According to the Debtors Schedules, there are approximately $152,000.00 in potential Claims entitled to priority under Section 507(a)(7) (the "Deposit Creditors"). During the course of these Proceedings the Debtor has become aware that many of the deposit Creditors have successfully processed chargebacks against their credit cards or otherwise do not assert Claims against the estate.  The Debtor therefore intends to object to all known Claims of Deposit Creditors seeking to have those individuals who still assert Claims file a response so indicating.

Holders of Allowed Class 2 Claims will receive deferred cash payments in the full amount of such Claims over a period of 60 months from the Effective Date.

*Class 2 is impaired.*

6.6     **Class 3** – Allowed General Unsecured Claims Against the Debtor

---

[4] The CSC UCC filing does not contain the name of the actual secured creditor.

15

Class 3 is comprised of all holders of Allowed general unsecured claims against the Debtor.  Based upon the proofs of claim that have been filed and the Debtor's Schedules, the Debtor estimates that there will be approximately $2,644,000.00[5] in Allowed Class 3 claims, including the unsecured Claims of taxing authorities, as well as the undersecured Claim of the SBA and the unsecured Claims of the creditors listed in Section 6.4 above.

In full and complete settlement, satisfaction and release of all Allowed Class 3 Claims, each holder of an Allowed Class 3 Claim shall receive its pro rata share of all of the Debtor's projected net disposable income over the five-year period following the Effective Date.  Based on the attached Budget, the Debtor projects that the total distribution to Class 3 Claimants will be approximately $172,553.00, or approximately six and one-half percent (6.5%) of such Allowed Class 3 Claims, to be paid in deferred cash payments over a period of 60 months from the Effective Date, with such deferred payments to be made in quarterly installments beginning at the end of the third quarter of 2026 (September 2026).

*Class 3 is impaired.*

6.7     **Class 4** – Equity Interests

Equity interest holders of the Debtor shall receive no distribution under the Plan on account of such interests, but will retain unaltered the legal, equitable and contractual rights to which such interests were entitled as of the Petition Date, except to the extent such interests are altered under this Plan or the Confirmation Order, or by a prior Bankruptcy Court Order.

As of the Petition Date, the equity interest holders of the Debtor were: Peter Marino (15%); Robert Feigen (67%); Eric Feigen (7%); The Odyssey Trust (11%).

Peter Marino is the President of the Debtor, Robert Feigen is a Director of the Debtor and Eric Feigen is the Treasurer and Director of the Debtor.  These individuals will continue in such capacities with respect to the reorganized Debtor and will continue to receive compensation consistent with their current compensation, if any, and in accordance with the Plan Budget attached hereto as **Exhibit A**.

*Class 4 is unimpaired.*

### ARTICLE VII
### IMPLEMENTATION OF THE PLAN

7.1     **Implementation**.  Upon the entry of a Confirmation Order confirming this Plan, the Reorganized Debtor shall be deemed authorized, without further order of the

---

[5] The Debtor's inclusion of any Claim for purposes of calculating the Plan distribution set forth herein is without prejudice to the Debtor's right to file a timely objection to such Claim.

Bankruptcy Court, to take any and all actions and to execute any and all documents which the Reorganized Debtor reasonably believe are necessary or appropriate to carry out the purposes and intent of this Plan. Within two business days of the Effective Date, the Debtor shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. Upon achieving substantial consummation of the confirmed Plan and resolution of any pending adversary proceeding, the Reorganized Debtor shall promptly file a notice of substantial consummation of the Plan and, if applicable, a motion for a final decree. The role of the Subchapter V Trustee shall terminate, and the Subchapter V Trustee shall be discharged, pursuant to section 1183(c)(1) of the Bankruptcy Code upon the filing of the notice of substantial consummation of the Plan.

7.2     **Means of Execution**. The Plan will be funded from the Debtor's future earnings and income. Upon the Effective Date, the Debtor is authorized to take all action permitted by law, including, without limitation, to use its cash and other assets for all purposes provided for in the Plan and in its business operations, and to borrow funds and to transfer funds for any legitimate purpose.

If the Plan is confirmed under section 1191(a) of the Code, the Debtor shall make the payments to creditors under the Plan.

Even if the Plan is confirmed under section 1191(b) of the Code, the Debtor intends to make such payments to creditors under the Plan.

7.3     **Property of Estate**. As of the Effective Date, all property of the Debtor, including property of the estate under 11 U.S.C. § 541 and 11 U.S.C. § 1186, shall be vested in the Debtor free and clear of any and all claims, liens, and encumbrances, except for the liens granted hereunder or to be retained under the Plan. Except as otherwise provided in the Plan and/or by Order of the Court, the Debtor shall remain in possession of all property of the estate.

7.4     **Injunction Relating to the Plan**. As of the Effective Date, all persons are hereby permanently enjoined from commencing, continuing or enforcing in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtor, the bankruptcy estate or the Reorganized Debtor, on account of, or respecting any claims, debts, rights, obligations, causes of action or liabilities discharged pursuant to the Plan, except to the extent expressly permitted under the Plan.

7.5     **Objections to Pre-Petition Claims.** No Claim will be paid unless it is allowed by the Court. If a creditor has filed a Proof of Claim before the Bar Date, the Claim will be allowed in full automatically unless an objection is filed with the Court within 60 days of the Effective Date of the Plan.  If a creditor's Claim is listed on the Debtor's schedules as undisputed, liquidated, and noncontingent, the Claim will be automatically allowed in full, regardless of whether a Proof of Claim is filed, unless an objection is filed with the Court within 60 days of the Effective Date. If a creditor's

Claim is listed as disputed, unliquidated, or contingent, such creditor must have filed a Proof of Claim by the Bar Date in order to participate in any distributions under the Plan. The Debtor shall have responsibility for objecting to Claims.

7.6 **Objections to Administrative Claims.** Claims for Administrative Expenses shall be allowed in full, unless an objection to such Claim is filed within the deadline set by the Court following the filing of the Administrative Claim or Fee Application.

7.7 **Disputed Claim Reserve.** The Reorganized Debtor will create a reserve for disputed Claims. Each time the Reorganized Debtor make a distribution to the holders of Allowed Claims, the Debtor will place into a reserve the amount that would have been distributed to the holders of disputed Claims if such Claims had been allowed in the full amount claimed. If a disputed Claim becomes an Allowed Claim, the Debtors shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the Plan calculated using the amount of the Allowed Claim. Any funds no longer needed in reserve shall be distributed pro-rata among Allowed Claims in the same class.

7.8 **Controlling Effect of the Plan**. To the extent that the terms of this Plan are inconsistent with the terms of any agreement or instrument concerning any Claim or other matter, the terms of this Plan shall control.

7.9 **Other Duties and Responsibilities of the Debtor.** In addition to the various obligations and duties of the Debtor described elsewhere in the Plan, the Debtor shall have the following specific duties and powers:

   a. preparation and filing of tax returns including the right to request a determination of tax liability as set forth in Bankruptcy Code § 505;

   b. preservation or liquidation of assets or the distribution of proceeds of assets;

   c. filing of status reports with the Bankruptcy Court or other parties in interest; and

   d. filing a motion for Final Decree.

7.10 **Obligations to the United States Trustee.** After confirmation, the Debtor shall have no further obligations to the United States Trustee so long as all monthly operating reports have been timely filed.

7.11 **Discharge**

   a. Consensual Plan Discharge Provisions. If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan the Debtor will be discharged from any debt that arose before the Confirmation Date to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt: (i) imposed by this Plan; or

(ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Except as provided in the confirmation Order or the Plan, such discharge shall constitute a complete satisfaction, discharge and release of the Debtor and its property, of and from any and all debts, liabilities, or Claims arising on or before the Confirmation Date, including, without limitation, all principal and interest, and whether or not (a) a proof of claim or interest was filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim or Interest was Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest has accepted the Plan.

b.      Non-Consensual Plan Discharge Provisions.  If the Debtor's Plan is confirmed under § 1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first five years of this Plan, or as otherwise provided in § 1192 of the Code.  The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first five years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.  Such discharge shall become effective as of date of the entry of the Court's order, and, except as provided in the Confirmation Order or the Plan, shall constitute a complete satisfaction, discharge and release of the Debtor and its property, of and from any and all debts, liabilities, or Claims arising on or before the Confirmation Date, including, without limitation, all principal and interest, and whether or not (a) a proof of claim or interest was filed or deemed filed under Section 501 of the Bankruptcy Code, (b) such Claim or Interest was Allowed under Section 502 of the Bankruptcy Code, or (c) the holder of such Claim or Interest has accepted the Plan.

7.12    **Distributions**

a.      Delivery of Distributions.  Distributions, deliveries, and any notice to holders of Allowed Claims will be made at (i) the addresses set forth in any proof of claim filed by the holders of such Allowed Claims or, if none, at the address set forth in the Debtor's Schedules, or (ii) at the addresses set forth in any written notices of address changes delivered to and received by the Debtor after the Effective Date.  If any Distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Debtor is notified of the holder's then current address, at which time all returned Distributions will be made to the holder without interest.  All claims for undeliverable Distributions must be made to the Debtor on or before one hundred and twenty (120) days from the date of mailing or other form of delivery of such Distribution.  After that date, all unclaimed property shall revert to the Debtor and the Claim of any holder with respect to such property will be discharged and forever barred.

b.      Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims will be null and void if not cashed within 90 days of the date of their issuance.  Requests for reissuance of any check shall be made by the holder of the Allowed Claim which

respect to which the check originally was issued.  Any claim in respect of such a voided check must be made on or before one hundred and twenty (120) days after the date of issuance of the check (unless extended in the sole and exclusive discretion of the Debtor).  After that date, all claims in respect of void checks will be discharged and forever barred and the cash, including interest earned thereon, if any, shall be distributed in accordance with the terms of this Plan.

## ARTICLE VIII
## EXECUTORY CONTRACTS

8.1     **Assumption or Rejection.**  The Bankruptcy Code permits the rejection of executory contracts and unexpired leases that are burdensome to the Debtor's estate.

The Debtor is assuming the unexpired commercial lease with JD Murphy Management Co. (the "Lease")

As of the Petition Date, the prepetition cure amount owed under the Lease was approximately $8,900.00 (the "Rent Arrears").  The Rent Arrears shall be paid in cash, in full, on the Effective Date.

As of the Effective Date, all other executory contracts and unexpired leases, except those expressly assumed under the Plan or by prior Court order, shall be deemed rejected.

8.2     **Treatment upon Rejection**.  Any Claim for damages arising from the rejection of an executory contract or unexpired lease shall, upon allowance, be a Class 3General Unsecured Claim against the estate of the Debtor.  Proof of such Claim must be filed by the later of the Bar Date or 30 days after the Effective Date, or the claimant shall be forever barred from asserting such Claim.

## ARTICLE IX
## GENERAL PROVISIONS

9.1     **Jurisdiction.**  The Bankruptcy Court shall retain jurisdiction of the Proceedings pursuant to the provisions of Chapter 11 of the Bankruptcy Code until the final allowance or disallowance or all Claims affected by the Plan and the disposition of all property of the estate, and for the following purposes:

a.      To enforce any order, judgment or ruling previously entered herein;

b.      To interpret or construe the Plan and any and all provisions thereof or any order previously entered herein;

c.      To insure that the purpose and intent of the Plan are effectuated;

d.      To hear and determine any and all matters, controversies and disputes regarding the Plan;

e.      To hear and determine all Claims against the Debtor or against property of the Debtor or any and all objections to the allowance of such Claims which are not adjudicated or settled prior to the Confirmation Date and to determine participation, if any, under the Plan;

f.      To hear and determine any and all applications, adversary proceedings and contested matters properly pending on the Confirmation Date or properly brought thereafter;

g.      To hear and determine any and all claims arising from the assumption or rejection of Executory Contracts, and to consummate such assumption or rejection;

h.      To adjudicate all controversies concerning the classification of any claims;

i.      To liquidate damages in connection with any disputed, contingent, or unliquidated Claim;

j.      To adjudicate all claims of a security or ownership interest in any property of the estates or in any proceeds thereof;

k.      To adjudicate any claim or controversy out of any purchase, sale or contract made or undertaken by the Debtor during the Proceedings;

l.      To modify any provision of the Plan to the full extent permitted by the Bankruptcy Code;

m.      To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

n.      For any other purpose specifically set forth in the Confirmation Order;

o.      To make such orders as are necessary or appropriate to effectuate the provisions of the Plan; and

p.      To enter a final decree closing the Chapter 11 case.

9.2     **Payment Dates.**  Whenever any payment or distribution to be made under this Plan shall be due on a day other than a business day, such payment or distribution shall instead be made, without interest, on the immediately following Business Day.

9.3    **Headings.**  The headings used in the Plan are inserted for convenience only and neither constitutes a portion of this Plan nor in any manner affect the construction of the provisions of this Plan.

9.4    **Construction.**  The rules of construction set forth in Section 102 of the Code shall apply to construction of the Plan.

9.5    **Severability.**   Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Plan.

9.6    **Revocation.**  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.

9.7    **Time.**  In computing any period of time prescribed or allowed by this Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.  When the period of time prescribed or allowed is less than eight calendar days, intermediate days that are not Business Days shall be excluded in the computation.

9.8    **Amendments to Plan.**  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtor at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122, 1123, 1190 and 1193 of the Bankruptcy Code, and the Debtor shall have complied with Section 1190 of the Bankruptcy Code. The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122, 1123, 1190 and 1193 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 and 1191 of the Bankruptcy Code.  If a Plan has been confirmed under section 1191(b) of the Bankruptcy Code, the Debtor may amend this Plan at any time within five years of the Confirmation Date so long as the Plan, as modified, meets the requirements of section 1191(b).  In the event that the Plan has been confirmed under Section 1191(b) and the Debtor fails to make payments under the Plan, then (i) the Debtor shall have ninety (90) days to cure such payment obligations; and (ii) if the Debtor is unable to cure such payment obligations, it shall file an amended Plan supported by a revised projected disposable income analysis, which amended Plan shall propose treatment of holders of Allowed Claims consistent with Section 1191.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  The Debtor or the Reorganized Debtor may, without notice to holders of claims, insofar as it

22

does not materially and adversely affect the interests of any such holders, correct any defect or omission in the Plan and any exhibit to the Plan or in any Plan Document.

9.9   **Creditor Remedies in the Event of Debtor's Default.**  Absent further orders of this Court, in the event that the Debtor is unable or unwilling to make any payment or take any action required under the Plan, any creditor may: (a) if the Proceedings are closed, move to reopen the Proceedings and reappoint the Subchapter V Trustee; (b) if the Proceedings are open, move for dismissal or conversion of the case to one under Chapter 7; or (c) seek any and all other remedies allowed under the Bankruptcy Code, which remedies shall require the authority of this Court.

9.10   **No Interest.**  Except as expressly stated in this Plan or allowed by a Final Order of the Bankruptcy Court, no interest, penalty or late charge is allowed on any Claim or Interest subsequent to the Petition Date.

9.11   **No Attorneys' Fees.**  No attorneys' fees shall be paid with respect to any Claim or Interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

9.12   **Amounts of Claims and Interests.**  All references to Claims and Interests and amounts of Claims and Interests refer to the amount of the Claim or Interest allowed by Final Order by the Court or by this Plan.   Claims and Interests which have been objected to and which have not been allowed or disallowed prior to the day set for return of ballots shall not be entitled to be voted and be counted unless the claimant has obtained an Order of the Bankruptcy Court estimating the claim for purposes of voting on the Plan.   Interested parties reserve the right, both before and after the Confirmation, to object to Claims and Interests so as to have the Court determine the Allowed Amount of such Claim or Interest to be paid under this Plan.

9.13   **Litigation; Preservation of Causes of Action.**  Subject to the terms of this Plan, the Reorganized Debtor shall retain the right to bring Avoidance Actions and generally: (i) to avoid transfers under Section 522, 544, 545, 547, 548 or 549 of the Bankruptcy Code; (ii) to recover transfers pursuant to Section 550 of the Bankruptcy Code; (iii) to avoid any lien under Section 506(d) of the Bankruptcy Code; (iv) to subordinate an lien under Section 510(c) of the Bankruptcy Code; and (v) generally exercise the avoidance powers provided under the Bankruptcy Code following the Effective date of the Plan.

The Debtor is investigating the existence of potential avoidance actions but has not yet determined if any such actions in fact exist, and if so, whether it would be economically prudent to pursue them.

9.14   **No Waiver of Discharge.**  Except as otherwise specifically provided herein, nothing in this Plan shall be deemed to waive, limit or restrict in any way the discharge granted in Section 1141 of the Bankruptcy Code.

9.15 **Governing Law.** Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Massachusetts.

9.16 **Successors and Assigns.** The rights, duties and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such person.

9.17 **Headings**. Headings are used in the Plan for convenience and for reference only and shall not constitute a part of the Plan for any other purpose.

*** Signature Page Follows***

Respectfully submitted, this 2nd day of March 2026.

RECREATION DISCOUNT WHOLESALE, INC.

Debtor-in-Possession

/s/ Eric Feigen
Eric Feigen, Treasurer and Director

Counsel for the Debtor in Possession

*/s/ David B. Madoff*
David B. Madoff (BBO#552968)
Steffani M. Pelton (BBO#666470)
MADOFF & KHOURY LLP
124 Washington Street – Ste. 202
Foxborough, Massachusetts 02035
(508) 543-0040
madoff@mandkllp.com